UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

WILLIAM RAY LEE                                                                    PLAINTIFF

v.                                                     CIVIL ACTION NO. 1:23-CV-P118-JHM

TIM MEADOR et al.                                                                 DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff William Ray Lee, a prisoner proceeding *pro se* and *in forma pauperis*, initiated this 42 U.S.C. § 1983 action.  The complaint is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).  For the following reasons, some of Plaintiff's claims will be dismissed, one will be allowed to continue, and Plaintiff will be allowed to file an amended complaint.

## I. STATEMENT OF CLAIMS

Plaintiff, a convicted prisoner now incarcerated at the Roederer Correctional Complex, sues Allen County Jailer Tim Meador and Allen County employees Major Dewayne Stone and Deputies Josh Anderson, Tommy Bridgeman, and Janet Bridgeman, in their individual and official capacities.  Plaintiff alleges that on October 8, 2022, he was assaulted by multiple inmates while he was housed at the Allen County Detention Center.  He states, "After the assault, I sought the attention of jail staff and was removed from the housing unit."  Plaintiff explains that he was then temporarily placed in a holding cell; the inmates who assaulted him were removed from the housing unit; and then he was placed back in the housing unit.

Plaintiff alleges that he was not allowed to seek medical attention for his jaw and chin, which were broken during the assault.  According to the complaint, Defendants Janet Bridgeman,

Anderson, and Stone advised Plaintiff that because he could talk his jaw was not broken "and that they had 'protocol' to follow."

Plaintiff alleges that Tommy Bridgeman advised him that if he caused problems "from this incident that I would be shipped somewhere and both my legs and arms would be shattered and if I messed with him, that my brains would be splattered on the walls in a holding cell."

Plaintiff states that he tried to contact his family to let them know what happened and to seek medical attention, but his "chirp" device, which Plaintiff describes as "a messaging device [that is] allowed in the facility," was taken from him. He further states that he was "told that I didn't need to make the situation worse, and contact my family."

Plaintiff states that he was taken to a medical center in Mayfield, Kentucky, ten days later, where, according to medical records attached to the complaint, he was diagnosed with an "acute fracture involving the mandibular symphysis as well as the angle of the left with mild displacement." According to Plaintiff, he was taken back the next day for surgery. He states that he now has two plates in his chin and one in his jaw. He alleges, "I am in constant pain and the plates have not healed correctly or properly due to the actions of [Defendants] in not following the recommendations and conditions from the Doctor post op." He also states that he was fed hard items instead of a soft diet which prevented proper healing.

Plaintiff further alleges that after the assault he was intentionally denied the ability to contact anyone, his mail was "screened prior to being sent from the facility," his grievances were discarded or erased, and he was "threatened with being transferred to Christian County under threat of continuously being assaulted or killed if I tried to pursue this matter."[1]

As relief, Plaintiff asks for compensatory and punitive damages.

---

[1] The Court assumes that this is the same threat that Plaintiff attributes to Defendant Tommy Bridgeman.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). When determining whether a plaintiff has stated a claim upon which relief may be granted, the Court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

 "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

### A. Official-capacity claims

The claims against Defendants in their official capacities must be construed as brought against the governmental entity which employs them, *i.e.*, Allen County. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

When a § 1983 claim is made against a municipality, like Allen County, it is not enough to allege that the plaintiff's harm was caused by a constitutional violation; a plaintiff must also allege that the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997).

Here, reading the complaint liberally, the only Allen County policy or custom that Plaintiff points to is a "'protocol'" by which he was allegedly denied treatment for his broken jaw/chin because he was still able to talk. On review, the Court will allow this Eighth Amendment claim for deliberate indifference to Plaintiff's serious medical need to continue against Allen County. The Court will dismiss the official-capacity claims against Defendants as redundant to the claim against Allen County, the real party in interest.

## B. Individual-capacity claims

### 1. Defendant Meador

Plaintiff's complaint makes no allegations against Defendant Meador.  To the extent that Plaintiff seeks to hold Defendant Meador, as the Allen County Jailer, liable in his individual capacity for any of the alleged wrongdoing, the Court will dismiss such claim because Plaintiff has not alleged that Defendant Meador directly participated in the events related to this claim.  In so finding, the Court notes that the doctrine of *respondeat superior* does not apply in § 1983 actions to impute liability to supervisors.  *Monell*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  Rather, to establish supervisory liability in a § 1983 action, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy*, 729 F.2d at 421 (citing *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 872-74 (6th Cir. 1982)).  "[L]iability of supervisory personnel must be based on more than merely the right to control employees."  *Hays*, 668 F.2d at 872.  "Likewise, simple awareness of employees' misconduct does not lead to supervisor liability."  *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)).  Supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'"  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)).  Accordingly, the Court will dismiss the individual-capacity claim against Defendant Meador for failure to state a claim upon which relief may be granted.

### 2. Grievances

Plaintiff alleges that his grievances were discarded or erased.

Prisoners do not possess a constitutional right to a prison grievance procedure.  *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) ("All circuits to consider this issue have . . . found that there is no constitutionally protected due process right to unfettered access to prison grievance procedures.").  Consequently, "[A] plaintiff cannot premise a § 1983 claim on allegations that a jail's grievance procedure was inadequate and/or unresponsive because there is no inherent constitutional right to an effective jail grievance procedure in the first place." *Olivier v. City of Clarksville*, No. 3:16-CV-03306, 2017 WL 695966, at *3 (M.D. Tenn. Feb. 21, 2017).  The Court, therefore, will dismiss this claim.

### 3. Not being able to contact family/"chirp"/mail

Plaintiff states that he tried to contact his family to let them know what happened and to seek medical attention, but his messaging device was taken from him.

While prisoners have a right to communicate with friends and family, they "do not have a constitutional right to a particular form of communication" under the First Amendment.  *Miles v. Scanlon*, No. 1:21-CV-74, 2021 WL 1809834, at *5 (W.D. Mich. May 6, 2021).  Plaintiff states that his messaging device was taken from him, but he does not allege that he could not communicate with family through telephone calls or visits.

Plaintiff also does not allege that he could not contact his family through the mail.  Although he alleges that his mail was "screened prior to being sent from the facility," he does not allege that the screening of his mail was different than the screening of any other prisoner's mail or that the screening included privileged legal mail.  "Many courts have held that prison officials do not violate the First Amendment by inspecting an inmate's non-legal mail." *Longmire v. Mich. Dep't of Corr.*, No. 2:19-CV-103, 2019 WL 3282678, at *5 (W.D. Mich. July 22, 2019) (citing cases); *see also Wolff v. McDonnell*, 418 U.S. 539, 576 (1974) ("[F]reedom from censorship is not

equivalent to freedom from inspection or perusal."); *Buntyn v. CJC, Madison Cnty. Jail*, No. 20-1108-JDT-CGC, 2020 WL 3947333, at *3 (W.D. Tenn. July 10, 2020) (holding on initial review that no First Amendment claim existed where even though prisoner's outgoing mail was read, prisoner did not allege that it was privileged legal mail) (citing *Meadows v. Hopkins*, 713 F.2d 206, 208-11 (6th Cir. 1983)); *Longmire*, 2019 WL 3282678, at *5 (W.D. Mich. July 22, 2019).

The Court will dismiss Plaintiff's claims of not being able to contact his family, the removal of his chirp device, and the screening of his mail.[2]

### 4. Threats

Plaintiff alleges that Defendant Bridgeman threatened him with being "shipped somewhere" and his legs and arms would be "shattered" if he caused "problems from this incident" and that if Plaintiff "messed with him," Plaintiff's "brains would be splattered on the walls in a holding cell."

The Sixth Circuit Court of Appeals has had a "longstanding rule that 'verbal abuse and harassment of prisoners do not alone give rise to a constitutional claim.'" *Roberts v. Carroll*, No. 4:18-CV-04-SKL, 2021 WL 5139505, at *2 n.5 (E.D. Tenn. Nov. 3, 2021) (quoting *Small v. Brock*, 963 F.3d 539, 541 (6th Cir. 2020)); *see Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) ("[V]erbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim."); *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987) (per curiam); *see also McDonald v. Sullivan Cnty. Jail*, No. 2:08-CV-280, 2010 WL 2010834, at *3 (E.D. Tenn. May 18, 2010) (finding prison guard's threat to kill plaintiff "may be petty, oppressive, and unprofessional, [but] it is not unconstitutional"); *Miles v. Tchrozynski*, No. 2:09-CV-11192, 2009 WL 960510, at

---

[2] The Court notes that Plaintiff does allege several paragraphs later in the complaint that "I had been intentionally denied the ability to contact anyone regarding this matter," but, as stated above, the complaint indicates that his mail was sent out in contradiction to this statement.

*1 (E.D. Mich. Apr. 7, 2009) ("Even verbal threats by a corrections officer to assault an inmate do not violate an inmate's Eighth Amendment rights.").

In *Small*, the Sixth Circuit retreated from that rule in holding that "a prisoner states an Eighth Amendment claim by alleging that, without provocation, a prison official threatened the prisoner's life on multiple occasions and took concrete steps, such as aggressively brandishing a deadly weapon, to make those threats credible." *Roberts v. Carroll*, No. 4:18-CV-04-SKL, 2021 WL 5139505, at *2 n.5 (E.D. Tenn. Nov. 3, 2021) (citing *Small*, 963 F.3d at 541)).

This case differs from *Small*. In *Small*, the plaintiff alleged that, "without provocation, Officer Brock brandished a knife, threatened to kill him, and motioned in a manner suggesting how Brock would use the knife to kill Small. This occurred on several occasions, causing Small to seek 'treatment and counseling' for 'paranoia, mental distress, [and] psychological stress.'" *Small*, 963 F.3d at 540.

Here, Plaintiff alleges no brandishing of a weapon or other "concrete steps" by Defendant Bridgeman to make his threats credible; further, Defendant Bridgeman's alleged threat was not immediate in nature and not repeated as it was in *Small*. *Id*. at 541 ("The issue then is whether unprovoked and repeated threats to a prisoner's life, combined with a demonstrated means to immediately carry out such threats, constitute conduct so objectively serious as to be 'antithetical to human dignity.'") (quoting *Hope v. Pelzer*, 536 U.S. 730, 745 (2002)). And Plaintiff alleges no psychological consequences such as the "paranoia, mental distress, [and] psychological stress" necessitating "treatment and counseling" as alleged in *Small*. *See, e.g.*, *Rhoads v. Dieble*, No. 1:20-CV-1028, 2020 WL 7382285, at *3-4 (W.D. Mich. Dec. 16, 2020) (finding no Eighth Amendment claim where, "In contrast to the conduct described in *Small*, Plaintiff alleges a single incident, not multiple serious occasions. Moreover, Dieble's alleged threat did not suggest that he

intended to immediately end Plaintiff's life. Finally, the conduct in *Small* involved an officer's motions with a knife that simulated his killing of Small, but Plaintiff described no such 'aggressive brandishing' of Dieble's shoes."); *Howell v. Mayhew*, No. 1:21-CV-69, 2021 WL 2820666, at *10 (W.D. Mich. July 7, 2021) (finding prisoner stated Eighth Amendment claim where "the death threats issued by Defendants . . . were detailed and repeated . . . [and] they followed a beating by [three] Defendants . . . and an attempt to hire another prisoner to attack Plaintiff by [two] Defendants.").

The Court also considers whether the alleged verbal threats in connection with Plaintiff attempts to seek medical attention and contact his family support a retaliation claim. A claim for retaliation requires a prisoner to establish that (1) he "engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

Assuming Plaintiff's grievances, mail, and attempts to "chirp" could be considered protected conduct and that the alleged threats against his life and limb could constitute an "adverse action,"[3] it is not clear what motivated Defendant Bridgeman's threats which appear from the complaint to have come before Plaintiff's actions in seeking medical treatment and attempts to reach his family. Nor is it clear what the "incident" referred to in Defendant Tommy Bridgeman's threat is. The Court will allow Plaintiff to amend his complaint to provide details as to the sequence of events as to when and why Defendant Bridgeman threatened him. *See, e.g.*,

---

[3] In some cases, the threat of an adverse action can "satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct." *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (citation omitted).

*LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[U]nder Rule 15(a) of the Federal Rules of Civil Procedure, a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA [Prison Litigation Reform Act].").

*5. Deliberate indifference to Plaintiff's serious medical need*

Plaintiff alleges that after his surgery his jaw did not heal properly due to the actions of "[Defendants] in not following the recommendations and conditions from the Doctor post op." He also specifically alleges that he was fed hard items instead of a soft diet which prevented proper healing. However, he does not specify which Defendant(s) was/were responsible for not following the doctor's recommendations.

Plaintiff also will be afforded an opportunity to amend his complaint to name those individual(s) responsible.

### III. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's official capacity-claims against Defendants Tim Meador, Dewayne Stone, Josh Anderson, Tommy Bridgeman, and Janet Bridgeman; and his claims related to his grievances, removal of his "chirp" device, and the screening of his outgoing mail are **DISMISSED** with prejudice for failure to state a claim upon which relief can be granted within the meaning of 28 U.S.C. § 1915A(b)(1).

**IT IS FURTHER ORDERED** that on or before **April 5, 2024**, Plaintiff may amend his complaint to provide details as to the sequence of events as to when and why Defendant Bridgeman threatened him and to name the individual(s) responsible for not following the doctor's orders for Plaintiff's recovery after surgery.

The Clerk of Court is **DIRECTED** to **terminate** Defendant Tim Meador as a party to this action and to **add** Allen County as a party.

After April 5, 2024, or if Plaintiff files an amended complaint, should he file one, and it has undergone 28 U.S.C. § 1915A review, the Court will enter a separate Service and Scheduling Order to govern the remaining claim(s).

Date:  March 7, 2024

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:     Plaintiff, *pro se*
4414.009

11